IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BRIGHTWELL,            *
      Plaintiff,
                          *

   v.            CIVIL ACTION NO. DKC-09-816
                          *
MARYLAND DIVISION OF CORRECTIONS,
et al.,
      Defendants.            *
                          ******

**MEMORANDUM OPINION**

On March 31, 2009, the court received Plaintiff David Brightwell's civil rights complaint seeking compensatory damages and injunctive relief filed pursuant to 42 U.S.C. § 1983. Paper No. 1. Brightwell alleges that he was subjected to excessive force when he was handcuffed from behind in violation of medical orders and that he received inadequate medical care for the injury arising from the event. Paper Nos. 1 and 4.

Defendants Correctional Medical Services, Inc., Maryland Division of Corrections, former Warden William Williams, and Correctional Officer Calvin Vincent have filed Motions to Dismiss, or in the Alternative for Summary Judgment. Paper Nos. 19, 24 and 38. Plaintiff has filed oppositions. Paper Nos. 27 and 44. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motions filed by Defendants, treated as motions for summary judgment, will be granted.[1]

---

[1] Plaintiff has filed a Motion for Clerk to Make Copies of Exhibits. Paper No. 43. Plaintiff's exhibits attached to his response to Vincent's dispositive motion (Paper No. 44) have been electronically docketed and as such counsel for Defendants have access to them. Accordingly, the Motion shall be denied.

**Background**

Brightwell alleges that on or about July 26, 2006, while housed at the Maryland House of Correction-Jessup, he was subjected to a strip search and his cell was searched. After the search he was instructed by Captain Vincent to turn around and place his hands in the back to be handcuffed. Plaintiff states that he advised Vincent that medical orders stated he was to be handcuffed only in the front. He states Vincent ignored him and handcuffed him from behind, causing injury to his arm. Brightwell states he submitted numerous sick call slips concerning the injury to his arm but received inadequate medical care. Paper No. 1.

Vincent avers that he does not recall the incident to which Brightwell refers in this lawsuit. July 26, 2006 was the day following the murder of a correctional officer at MHC by a group of inmates armed with home-made knives. As a result of that murder, MHC was placed on lockdown and a "shakedown" of the institution was undertaken. Vincent avers that correctional officers do not handcuff inmates in the front as they can suddenly strike an officer with cuffed fists or the cuffs themselves. Additionally, inmates handcuffed in front can place officers in a headlock, choke the officer, or twist the officer's neck. Following the murder of the correctional officer, every inmate at MHC was considered a potential threat. Vincent further avers that in his twenty years experience as a correctional officer it is common for inmates to claim that they should be handcuffed in front due to medical reasons. Due to the security concerns, officers do not take the word of the inmate; instead, they must see recent written medical documentation that the inmate should not be handcuffed from the back. Inmates are advised to keep such medical orders on their person or within immediate reach among their property.

Vincent states that had Plaintiff advised him that he needed to be handcuffed in front due to medical reasons, he would have asked Plaintiff to show him the written documentation from the medical department. If documentation had been produced, he would have handcuffed Plaintiff in front. Vincent avers he follows this procedure in all cases and if Plaintiff was handcuffed behind the back on July 26, 2006, it was because he could not produce the documentation for cuffing in front. Vincent further avers that had Plaintiff advised him that he was suffering significant pain from being cuffed from behind or had shown that his arm was swollen, he would have escorted him to the medical unit for evaluation. Vincent does not recall being interviewed by any investigator regarding this incident. Paper No. 38, Ex. A.

The uncontroverted medical records indicate that Plaintiff submitted sick call slips on July 26, 2006 and August 22, 2006, stating his right arm was sore and swollen due to the handcuffing on July 26, 2006. Plaintiff was evaluated on September 5, 2006, by Getachew Teffera, M.D. who recommended at that time that Plaintiff be handcuffed in the front for medical reasons,[2] as Plaintiff has a history of an open reduction and internal fixation of his right forearm with metal plates and skin grafting performed in 1990. Paper No. 19, Ex. A.

Plaintiff continued to complain of soreness in his right arm. Upon examination, no redness, bruising, or swelling was observed, while good range of motion ("ROM"), muscle strength and radial pulses were noted. Although Plaintiff did not complain of any numbness or tingling of his arm or fingers in October, 2006, due to Plaintiff's continued subjective complaints x-rays were ordered. The x-ray, performed on October 18, 2006, showed no loose hardware and no significant

---

[2] Plaintiff has not produced a copy of the medical order requiring he not be handcuffed from behind prior to July 26, 2006. None of the Defendants have addressed whether in fact such an order existed. Plaintiff has provided to the court his daily log reflecting his sick call slips, remedy requests, and correspondence. Paper No. 27, Ex. 4 and 5.

change in Plaintiff's arm since the x-ray taken on October 8, 2003. Plaintiff was advised of the x-ray results and told he would be evaluated by a physician soon. *Id.*, Ex. B, p. 1-7, 61, 73.

On November 5, 2006, Plaintiff filed a sick call slip complaining of pain in his arm. Approximately two weeks later, Plaintiff filed another sick call slip complaining of pain in his arm and was scheduled for a physician assistant sick call. *Id.*, Ex. B, p. 8-9.

P.A. Beebe communicated to Plaintiff throughout December, 2006, and January, 2007, stating that his x-ray was fine, the hardware in his arm was in place, and it was normal to experience soreness. Beebe assessed Plaintiff as suffering from chronic arthralgia (joint pain). Beebe educated Plaintiff about his condition and advised him it would be a lifelong problem with good and bad days. *Id.*, p. 10-13. Plaintiff continued filing sick call slips requesting to see an "arm specialist." He filed approximately 75 sick call slips between July 26, 2006 and April 29, 2009 concerning his arm. *Id.*, Ex. A.

Throughout 2007 Plaintiff was prescribed anti-inflammatory and analgesic medications as needed. His numerous evaluations by medical staff were unremarkable. An x-ray of Plaintiff's arm was taken on April 25, 2007. It was unchanged since the October, 2006 x-ray. *Id.*, Ex. A, Ex. B, p. 14-22, 62-67, 74.

In 2008, Plaintiff continued his complaints of pain in his arm and his concern that something was wrong with the hardware. The objective examinations by health care professionals remained unremarkable. Plaintiff was provided Tylenol for pain management and health care professionals ordered an additional x-ray of Plaintiff's right arm. The x-ray was taken on May 28, 2008, but because the entire plate and proximal forearm were not visible, the x-ray was repeated on June 6, 2008. The x-ray showed Plaintiff's hardware was intact and no changes were observed in Plaintiff's arm since the April, 2007 x-ray. *Id.,* p. 27-33.

From July through November, 2008, Plaintiff continued to file sick call slips regarding his arm, seeking to see an "arm specialist" and stating his belief that something was wrong with the hardware. In November, 2008, Dr. Adediran ordered another x-ray, which was taken on November 21, 2008. It showed no change since the last x-ray. Plaintiff's physical exams remained unremarkable and he was prescribed Tylenol for his subjective complaints of discomfort. *Id.,* pp. 34-41, 69-70.

On December 7, 2008, Plaintiff filed a sick call slip with the same complaints but when evaluated indicated he was better and did not need anything. A week later he renewed his sick call slip and was scheduled to see the physician. On December 22, 2008, Plaintiff was evaluated by Dr. Adediran who noted that Plaintiff had borderline renal function due to hypertension and hunger strikes. Dr. Adediran noted he would send Plaintiff to physical therapy for his arm after his renal condition cleared. Dr. Adediran also noted Plaintiff was non-compliant with his plan of care. The doctor prescribed muscle rub for Plaintiff's arm. *Id*. p. 48-54, 71-72.

In March, 2009, Plaintiff was still in renal failure. Plaintiff agreed to participate in his treatment plan. He continued to complain about his arm. *Id*., p. 55-56.

Plaintiff was examined by Dr. Navarro on April 29, 2009. Dr. Navarro noted Plaintiff complained of pain when his arm was manipulated. She did not observe any swelling or erythema. *Id*., p. 57-60.

## Standard of Review

**A.     Motion to Dismiss**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

5

not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964-65 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id*. at 1966 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S.Ct. 1937, 1949 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *IFAST, Ltd. v. Alliance Solution Telecommunications Industry*, 2007 WL 3224582, at *3 (D. Md. 2007).

**B.     Motion for Summary Judgment**

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

**A.     Respondeat Superior**

Plaintiff's allegations against Correctional Medical Services, Inc. (CMS), the private prison health care provider, the Maryland Division of Correction, and former Warden William Williams are based solely upon the doctrine of *respondeat superior*.  The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims.  *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983).  *Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992) (respondeat superior does not apply to § 1983 claim, even where defendant is private corporation); *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991).  Accordingly,  Plaintiff's claims against Defendants CMS, Maryland Division of Correction and former Warden William Williams shall be dismissed.

**B.     Failure to Exhaust Administrative Remedies**

The court must first examine Defendant Vincent's assertion that Plaintiff's excessive force claim should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His excessive force claim must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*,

286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Plaintiff avers that he filed an administrative remedy form regarding the July 26, 2006, incident but that he never received a response. Paper No. 44, Ex. 00. Scott S. Oakley, Executive Director, Inmate Grievance Office, avers that he has reviewed the records of the IGO and the seven grievances filed by Plaintiff from July 26, 2006 to February 12, 2009, and none concern the July 26, 2006, incident. Paper No. 38, Ex. B. Oakley's Affidavit refers to inmate Bright not inmate Brightwell. It is unclear whether this a typographical error or whether Mr. Oakley reviewed the records of a different inmate. Plaintiff has provided copies of nine letters directed to him from Mr. Oakley referencing nine separate cases filed by Plaintiff with the IGO's office during the time referenced in Mr. Oakley's affidavit, calling into question the accuracy of the affidavit that avers that Plaintiff filed only seven complaints during that time frame. Paper No. 44, Ex. 01. Plaintiff however, does not dispute that he did not pursue his remedies beyond submitting a remedy request at the administrative level. Accordingly, the court finds that Plaintiff has failed to exhaust available administrative remedies with regard to his claim of excessive force. Unlike the prisoner plaintiff in *Taylor v. Barnett*, 105 F.Supp. 483, 486 (E.D. Va. 2000), prison officials do not appear to have

9

frustrated Plaintiff's attempts at exhaustion; instead, Plaintiff through his own actions failed to pursue his administrative remedies after he failed to receive a timely response at the institutional level.

**D.    Medical Care**

Even if Plaintiff had named the proper parties, his claim regarding denial of adequate medical care would still fail. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S.294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter

10

. . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Records before the court demonstrate that medical contractors have not acted with indifference to Plaintiff's medical needs. The uncontroverted record reveals that Plaintiff was routinely evaluated by medical staff concerning pain in his arm. He was provided repeated x-rays, physical examinations, and analgesic medication. He was diagnosed as suffering from joint pain due the reconstructive surgery he underwent as a result of a gun-shot wound suffered prior to his incarceration. He was counseled that this pain would be a life-long problem with good and bad days. Physical therapy was considered but due to Plaintiff's hypertension was not instituted. Plaintiff simply disagrees with the medical judgment of his health care providers  Plaintiff's desire to see an "arm specialist" amounts to nothing more than a disagreement with a course of treatment and does not provide the framework for a federal civil rights complaint but rather, at most, states a claim of negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). The court simply cannot find from the uncontroverted medical records before it that the medical care received by Plaintiff was so egregious as to constitute an Eighth Amendment violation.

**E.     Excessive Force**

Even if Plaintiff were to establish administrative exhaustion as to the claim concerning handcuffing, Defendant Vincent would be entitled to summary judgment. Analysis of cruel and unusual punishment claims "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). In order to meet the subjective component of this test in an excessive force case, a prisoner must show that the force was applied "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U S. 1, 6-7 (1992). In making this determination, a court must look at the need for the application of force, the relationship between the need and the amount of force applied, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

Insofar as the objective element of an excessive force case is concerned, the prisoner "need not show that [the] force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action. All that is necessary is proof of more than de minimis pain or injury." *Williams*, 77 F.3d at 761(citation omitted); *see also Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). Plaintiff's sole injury from the incident was a subjective complaint of pain and swelling. No swelling, bruising, laceration, or any other objective evidence of injury was noted by medical personnel. Despite Plaintiff's repeated subjective complaints regarding his arm, medical personnel diagnosed him as suffering from joint pain due to the reconstructive surgery performed on Plaintiff prior to his incarceration. There is simply no evidence that Plaintiff was injured as a result of being hand cuffed in back. The court cannot say that Plaintiff's injury was more than de minimis. *See Taylor v. McDuffie,* 155 F.3d 479 (4th Cir. 1998) (plaintiff failed to show that injuries were more

than de minimis when no medical treatment was required or prescribed for any alleged injuries and medical records did not support the injuries plaintiff purported to have received); *Riley v. Dorton*, 115 F. 3d 1159, 1167-68 (4th Cir. 1997) (handcuffing pretrial detainee for six hours, inserting tip of pen in detainee's nose, threatening detainee, and slapping detainee across face, demonstrated no more than de minimis injury.).

**Conclusion**

Defendants' Motions to Dismiss, or in the Alternative for Summary Judgment are granted. Judgment shall be entered in favor of Defendants and against Plaintiff. A separate order follows.

Date:  February 1, 2010                    _____/s/_____
                                            DEBORAH K. CHASANOW
                                            United States District Judge